Isaac N. Sutphin, P.C. (Wyo. State Bar # 6-3711)
Macrina M. Sharpe (Wyo. State Bar # 7-5757)
Colton R. Edwards (Wyo. State Bar # 8-7289)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
Facsimile:  307.778.8175
INSutphin@hollandhart.com
MMSharpe@hollandhart.com
CREdwards@hollandhart.com

ATTORNEYS FOR DEFENDANTS
COMPLETE HEALTH AND WELLNESS, LLC,
MARINE HOLDINGS, LLC, OLAV E. SANDNES
and GINA SANDNES

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| DOUBLE DOC RANCH, INC., a Wyoming corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>COMPLETE HEALTH AND WELLNESS, LLC, a Pennsylvania limited liability company, MARINE HOLDINGS, LLC, a Delaware limited liability company, OLAV E. SANDNES, an individual, and GINA SANDNES, an individual,<br><br>        Defendants.<br><br>────────────────────<br><br>COMPLETE HEALTH AND WELLNESS, LLC, a Pennsylvania limited liability company,<br><br>        Counterclaim Plaintiff,<br><br>   v.<br><br> DOUBLE DOC RANCH, INC. a Wyoming corporation,<br><br>        Counterclaim Defendant. | Civil Action No. 1:24-cv-00132-SAH |

## DEFENDANT/COUNTERCLAIM PLAINTIFF COMPLETE HEALTH AND
## WELLNESS, LLC'S ANSWER TO COMPLAINT AND COUNTERCLAIM

Defendant/Counterclaim Plaintiff Complete Health and Wellness, LLC (CHW), by and through undersigned counsel, hereby submits its Answer to Plaintiff's Complaint and Demand for Jury (Complaint) as follows:

## I.    Jurisdiction and Venue.

1.      In response to Paragraph 1 of the Complaint, CHW is without sufficient knowledge or information to form a belief as to the truth of the allegations that Plaintiff, Double Doc Ranch, Inc.'s (Double Doc) primary place of business is in Bighorn [sic] County, Wyoming, or is a Wyoming corporation, and therefore denies the same.

2.      In response to Paragraph 2 of the Complaint, CHW admits the allegations contained therein.

3.      In response to Paragraph 3 of the Complaint, the allegations are directed at another party, therefore no response from CHW is required. To the extent a response is required, CHW admits the allegations contained therein upon information and belief.

4.      In response to Paragraph 4 of the Complaint, the allegations are directed at another party, therefore no response from CHW is required. To the extent a response is required, CHW admits the allegations contained therein upon information and belief.

5.      In response to Paragraph 5 of the Complaint, CHW admits that Olav Sandnes is a manager of CHW. CHW denies that Olav Sandnes exercises complete control over the management and operations of CHW. Except as expressly admitted, CHW denies the allegations in Paragraph 5.

6.      In response to Paragraph 6 of the Complaint, CHW admits the Court has jurisdiction and admits that venue is proper.

## II.     Facts Common to All Causes of Action.

7.     In response to Paragraph 7 of the Complaint, CHW admits that this matter arises out of the sale of Wyoming Legacy Meat, LLC.

8.     In response to Paragraph 8 of the Complaint, CHW admits that the Promissory Note attached as Exhibit A to the Equity Purchase Agreement was signed by CHW's manager, Olav E. Sandnes. To the extent that Paragraph 8 characterizes the terms of the Equity Purchase Agreement, CHW refers to that document, which speaks for itself, and denies any allegations or characterizations inconsistent with that document. To the extent that the allegations in Paragraph 8 are legal conclusions, no response is required. CHW denies the allegation with regard to CH&W Realty, LLC's membership and affiliation, and affirmatively states that CH&W Realty, LLC is owned by Complete Health and Wellness, LLC. CHW further affirmatively states that CH&W Realty, LLC and the real property referenced in Paragraph 8 are not the subject of this dispute.

9.     In response to Paragraph 9 of the Complaint, CHW is without information to form a belief as to the truth of the allegations with regard to any contracts, promissory notes, and amendments to contracts that it is not a party to, and therefore denies the same. CHW objects to the undefined term "substantially drafted," and therefore denies any characterization or legal conclusions of the same. CHW admits that an attorney assisted in the drafting of the Equity Purchase Agreement, representing CHW's interests in the same. CHW further affirmatively states that, pursuant to Section 13.8 of the Equity Purchase Agreement, "[t]he parties have participated jointly in the negotiation and drafting of this Agreement. In the event of the ambiguity or question of intent or interpretation arises this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or

disfavoring any party by virtues of the authorship of any provision of this agreement." Except as expressly admitted, CHW denies the allegations in Paragraph 9.

A.    **Equity Agreement:**

10.    In response to Paragraph 10 of the Complaint, CHW admits that it executed an Equity Purchase Agreement. To the extent that Paragraph 10 characterizes the terms of the Equity Purchase Agreement, CHW refers to that document, which speaks for itself, and denies any allegations or characterizations inconsistent with that document. To the extent the allegations in Paragraph 10 are legal conclusions, no response is required. Except as expressly admitted, CHW denies the allegations in Paragraph 10.

11.    In response to Paragraph 11 of the Complaint, CHW admits that a Promissory Note was issued as Exhibit A to the Equity Purchase Agreement. To the extent that Paragraph 11 characterizes the terms of the Promissory Note, CHW refers to that document, which speaks for itself, and denies any allegations or characterizations inconsistent with that document. Except as expressly admitted, CHW denies the allegations in Paragraph 11.

12.    In response to Paragraph 12 of the Complaint, CHW admits that an Amendment Number 1 to Equity Purchase Agreement was signed by CHW. To the extent that Paragraph 12 characterizes the terms of the Amendment Number 1 to Equity Purchase Agreement, CHW refers to that document, which speaks for itself, and denies any allegations or characterizations inconsistent with that document. To the extent that the allegations in Paragraph 12 are legal conclusions, no response is required. Except as expressly admitted, CHW denies the allegations in Paragraph 12.

13.    In response to Paragraph 13 and its subsections (a) and (b) in the Complaint, CHW admits that the Amendment Number 1 to Equity Purchase Agreement contains payment

terms. To the extent that Paragraph 13 characterizes the terms of the Amendment Number 1 to Equity Purchase Agreement, CHW refers to that document, which speaks for itself, and denies any allegations or characterizations inconsistent with that document. To the extent that the allegations in Paragraph 13 are legal conclusions, no response is required. Except as expressly admitted, CHW denies the allegations in Paragraph 13.

14.     In response to Paragraph 14 of the Complaint, CHW admits that the Amendment Number 1 to Equity Purchase Agreement contains payment terms. CHW admits that the referenced Promissory Note was signed by Olav Sandnes as Manager for CHW. To the extent that Paragraph 14 characterizes the terms of the Amendment Number 1 to Equity Purchase Agreement or the Promissory Note, CHW refers to those documents, which speak for themselves, and denies any allegations or characterizations inconsistent with those documents. To the extent that the allegations in Paragraph 14 are legal conclusions, no response is required. Except as expressly admitted, CHW denies the allegations in Paragraph 14.

15.     In response to Paragraph 15 of the Complaint, CHW admits that prior to executing the Equity Purchase Agreement, the Schmidts communicated with CHW representatives regarding the WLM operations. To the extent that Paragraph 15 characterizes the substance of those conversations, CHW denies the same. Except as expressly admitted, CHW denies the allegations in Paragraph 15. CHW further affirmatively states that Section 13.5 of the Equity Purchase Agreement explains that the "Agreement including any exhibits, the purchase company disclosure letter and ancillary agreements contain the complete and entire understanding of the parties with respect to the subject matter. This Agreement supersedes all prior written or oral statements, representations, warranties, promises, assurance, agreements and understandings between the parties relating to or in connection with the subject matter of this

Agreement. Each party hereby acknowledges that he has not relied on any promise, representation or warranty that is not set forth in this Agreement."

16.    In response to Paragraph 16 of the Complaint, CHW admits that prior to executing the Equity Purchase Agreement, the Schmidts communicated with CHW representatives regarding the WLM operations. To the extent that Paragraph 16 characterizes the substance of the pre-sale conversations, CHW denies the same. To the extent that Paragraph 16 characterizes what CHW "clearly understood," CHW denies the same. CHW denies the remaining allegations in Paragraph 16. CHW further affirmatively states that Section 13.5 of the Equity Purchase Agreement explains that the "Agreement including any exhibits, the purchase company disclosure letter and ancillary agreements contain the complete and entire understanding of the parties with respect to the subject matter. This Agreement supersedes all prior written or oral statements, representations, warranties, promises, assurance, agreements and understandings between the parties relating to or in connection with the subject matter of this Agreement. Each party hereby acknowledges that he has not relied on any promise, representation or warranty that is not set forth in this Agreement."

17.    In response to Paragraph 17 of the Complaint, CHW denies the allegations contained therein.

18.    In response to Paragraph 18 of the Complaint, CHW admits that in November 2023, Forward Cody informed CHW that the grant funds were returned. CHW contends that the remaining allegations contained therein are legal conclusions to which no response is required. To the extent a response is required, CHW denies the remaining allegations in Paragraph 18.

**B.      History of Missed Payments and Attempts to Coerce New Sale Price:**

19.      In response to Paragraph 19 of the Complaint, CHW admits that it made monthly payments from March 2022 through October 2022. To the extent that Paragraph 19 characterizes the terms of the Promissory Note, CHW refers to that document, which speaks for itself, and denies any allegations or characterizations inconsistent with that document.

20.      In response to Paragraph 20 of the Complaint, CHW admits that it did not make a payment on November 15, 2022. To the extent that Paragraph 20 characterizes the terms of the Promissory Note, CHW refers to that document, which speak for itself, and denies any allegations or characterizations inconsistent with that document.

21.      In response to Paragraph 21 of the Complaint, CHW admits that its representative, Mr. Sandnes, had email conversations with the Schmidts regarding the WLM operations. To the extent that Paragraph 21 refers to the substance of those emails, CHW refers to those emails, which speak for themselves, and denies any allegations or characterizations inconsistent with those emails. Except as expressly admitted, CHW denies the allegations in Paragraph 21.

22.      In response to Paragraph 22 of the Complaint, CHW admits the allegations contained therein.

23.      In response to Paragraph 23 of the Complaint, CHW admits that its representative, Mr. Sandnes, had conversations with the Schmidts. To the extent that Paragraph 23 refers to the substance of written communications, CHW refers to those communications, which speak for themselves, and denies any allegations or characterizations inconsistent with those writings. CHW also affirmatively states that it subsequently made a payment to Plaintiff on February 15, 2023, as acknowledged in the following paragraph. CHW contends that the remaining allegations

contained in Paragraph 23 are legal conclusions to which no response is required. To the extent a response is required, CHW denies the allegations in Paragraph 23.

24.    In response to Paragraph 24 of the Complaint, CHW admits that it made a payment to Plaintiff on February 15, 2023. To the extent that Paragraph 24 characterizes the payment made on February 15, 2023, CHW denies the same. Except as expressly admitted, CHW denies the allegations in Paragraph 24.

25.    In response to Paragraph 25 of the Complaint, CHW admits that its representative, Mr. Sandnes, communicated with the Schmidts regarding the ownership and assets of CHW and the parties discussed a possible six-month interest-only extension with an option to pay off the contract in cash at a reduced price. To the extent that Paragraph 25 characterizes the substance of the telephone discussion between Mr. Sandnes, a representative of CHW, and Mr. Frank Schmidt, CHW denies the same. CHW contends that the allegations contained in Paragraph 25 are legal conclusions to which no response is required. To the extent that a response is required and except as expressly admitted, CHW denies the allegations in Paragraph 25.

26.    In response to Paragraph 26 of the Complaint, CHW admits that the Schmidts sent Mr. Sandnes, a representative of CHW, a proposed Amendment Number 2 to the Equity Purchase Agreement. To the extent that Paragraph 26 characterizes the terms of the proposed Amendment Number 2 to the Equity Purchase Agreement, CHW refers to that document, which speaks for itself, and denies any allegations or characterizations inconsistent with that document. To the extent that the allegations in Paragraph 26 are legal conclusions, no response is required. To the extent that a response is required and except as expressly admitted, CHW denies the allegations in Paragraph 26.

27.     In response to Paragraph 27 of the Complaint, CHW admits that it would not agree to Amendment Number 2 as proposed. To the extent that Paragraph 27 characterizes the terms of the proposed Amendment Number 2 to the Equity Purchase Agreement, CHW refers to that document, which speaks for itself, and denies any allegations or characterizations inconsistent with that document. To the extent that the allegations in Paragraph 27 are legal conclusions, no response is required. To the extent that a response is required and except as expressly admitted, CHW denies the allegations in Paragraph 27.

28.     In response to Paragraph 28 of the Complaint, CHW admits that it continued to negotiate with the Schmidts and that Mr. Sandnes, a representative of CHW, received an email on September 19, 2023 from Mr. Frank Schmidt, which speaks for itself. To the extent that Paragraph 28 characterizes the language from the email on September 19, 2023, CHW refers to that email and denies any allegations or characterizations inconsistent with that email. To the extent that the allegations in Paragraph 28 are legal conclusions, no response is required. To the extent that a response is required, CHW denies the allegations in Paragraph 28.

29.     In response to Paragraph 29 of the Complaint, CHW admits that Mr. Sandnes, a representative of CHW, sent an email on September 24, 2023 to Mr. Frank Schmidt, in a continued effort to negotiate an addendum. CHW affirmatively states that Paragraph 29 selectively pulls language from the email on September 24, 2023, which speaks for itself. To the extent that Paragraph 29 characterizes the language from the email on September 24, 2023, CHW refers to that email and denies any allegations or characterizations inconsistent with that email. To the extent that the allegations in Paragraph 29 are legal conclusions, no response is required. Except as expressly admitted, CHW denies the allegations in Paragraph 29.

30.     In response to Paragraph 30 of the Complaint, to the extent that Plaintiff is referring to the email from Mr. Frank Schmidt to Mr. Sandnes, a representative of CHW, on October 1, 2023, CHW refers to that email, which speaks for itself, and denies any allegations or characterizations inconsistent with that email. CHW admits that it received an email from Mr. Frank Schmidt on October 1, 2023 and continued its attempt to negotiate with the Plaintiff. Except as expressly admitted, CHW denies the allegations in Paragraph 30.

31.     In response to Paragraph 31 of the Complaint, CHW admits that a wire transfer in the amount of $45,336.00 was sent to Plaintiff as payment under the Equity Purchase Agreement. To the extent that Paragraph 31 characterizes that payment, CHW refers to the Equity Purchase Agreement, which speaks for itself, and denies any allegations or characterizations inconsistent with the same. To the extent that the allegations in Paragraph 31 are legal conclusions, no response is required. To the extent that a response is required, CHW denies the allegations in Paragraph 31. CHW is without information to form a belief as to the truth of the allegations with regard to the referenced real property purchase agreement, and therefore denies all remaining allegations in Paragraph 31.

32.     In response to Paragraph 32 of the Complaint, CHW admits that its representative, Mr. Sandnes, met with the Schmidts in Cody, Wyoming on October 12, 2023, with third-party facilitator, Ret. Judge Steven Cranfill. CHW admits that no agreement was reached. To the extent that the allegations in Paragraph 32 are legal conclusions, no response is required. To the extent that a response is required, CHW denies the allegations in Paragraph 32.

33.     In response to Paragraph 33 of the Complaint, CHW admits that it made additional payments to Plaintiff under the Equity Purchase Agreement.

34.    In response to Paragraph 34 of the Complaint, CHW admits that Mr. Gary M. Edelson of Montgomery McCracken, attorney for CHW, sent a Notice of Loss and Claim for Indemnification under Article 9 of the Equity Purchase Agreement. To the extent that Paragraph 34 characterizes that Notice, CHW refers to the Notice, which speaks for itself, and denies any allegations or characterizations inconsistent with the same. Except as expressly admitted, CHW denies the allegations in Paragraph 34.

35.    In response to Paragraph 35 of the Complaint, to the extent Plaintiff is referring to the Notice of Loss and Claim for Indemnification under Article 9 of the Equity Purchase Agreement, CHW affirmatively states that Paragraph 35 selectively pulls language from the Notice of Loss and Claim for Indemnification under Article 9 of the Equity Purchase Agreement, which speaks for itself. To the extent that Paragraph 35 characterizes the language and allegations contained in the Notice of Loss and Claim for Indemnification under Article 9 of the Equity Purchase Agreement, CHW refers to that document and denies any allegations or characterizations inconsistent with that document. To the extent that the allegations in Paragraph 35 are legal conclusions, no response is required. To the extent that a response is required, CHW denies any remaining allegations in Paragraph 35.

36.    In response to Paragraph 36 of the Complaint, CHW admits that it did not make a payment on March 15, 2024. To the extent that Paragraph 36 characterizes the terms of the Promissory Note, CHW refers to that document, which speak for itself, and denies any allegations or characterizations inconsistent with that document. To the extent that Paragraph 36 is referring to the follow-up to the Notice of Loss and Claim for Indemnification under Article 9 of the Equity Purchase Agreement sent via email and certified mail return receipt requested by Mr. Gary Edelson, attorney for CHW, that document speaks for itself. To the extent that

Paragraph 36 characterizes the language and allegations contained in the follow-up to the Notice of Loss and Claim for Indemnification under Article 9 of the Equity Purchase Agreement, CHW refers to that document and denies any allegations or characterizations inconsistent with that document. To the extent that the allegations in Paragraph 36 are legal conclusions, no response is required. To the extent that a response is required, CHW denies any remaining allegations in Paragraph 36.

37.     In answering Paragraph 37 of the Complaint, CHW admits that no payments have been made since the February 2024 payment. To the extent that Paragraph 37 characterizes the terms of the Equity Purchase Agreement and the Promissory Note, CHW refers to those documents, which speak for themselves, and denies any allegations or characterizations inconsistent with those documents. To the extent that the allegations in Paragraph 37 are legal conclusions, no response is required. To the extent that a response is required, CHW denies any remaining allegations in Paragraph 37.

## COUNT I – BREACH OF CONTRACT

38.     In answering Paragraph 38 of the Complaint, CHW incorporates by reference its responses to Paragraphs 1 through 37 of its Answer.

39.     In answering Paragraph 39 and its subparagraphs (a) and (b) in the Complaint, to the extent that it characterizes the terms of the Promissory Note and Amendment Number 1 to Equity Purchase Agreement, CHW refers to those documents, which speak for themselves, and denies any allegations or characterizations inconsistent with those documents. To the extent that the allegations in Paragraph 39 are legal conclusions, no response is required. To the extent that a response is required, CHW denies any remaining allegations in Paragraph 39.

40.     In answering Paragraph 40 of the Complaint, to the extent that Paragraph 40 characterizes the terms of the Promissory Note, CHW refers to that document, which speaks for itself, and denies any allegations or characterizations inconsistent with that document. To the extent that the allegations in Paragraph 40 are legal conclusions, no response is required. To the extent that a response is required, CHW denies any remaining allegations in Paragraph 40.

41.     Answering Paragraph 41 of the Complaint, CHW refers to the Promissory Note, which speaks for itself, and denies any allegations or characterizations inconsistent with that document. To the extent that the allegations in Paragraph 41 are legal conclusions, no response is required.

42.     In response to Paragraph 42 of the Complaint, CHW denies the allegations contained therein.

43.     In response to Paragraph 43 of the Complaint, CHW states that is has not made payments under the Equity Purchase Agreement since prior to March 2024.

44.     In response to Paragraph 44 of the Complaint, CHW refers to the Promissory Note, which speaks for itself, and denies any allegations or characterizations inconsistent with that document. To the extent that the allegations in Paragraph 44 are legal conclusions, no response is required. To the extent that a response is required, CHW denies any remaining allegations in Paragraph 44.

45.     In response to Paragraph 45 of the Complaint, CHW denies the allegations contained therein.

**COUNT II – BREACH OF THE IMPLIED COVENANT
OF GOOD FAITH AND FAIR DEALING**

46.     In response to Paragraph 46 of the Complaint, CHW incorporates by reference its responses to Paragraphs 1 through 45 of its Answer.

47.     In response to Paragraph 47 of the Complaint, CHW contends that the allegations contained therein are legal conclusions, to which no response is required. To the extent that a response is required, CHW denies any remaining allegations in Paragraph 47.

48.     In response to Paragraph 48 of the Complaint, CHW contends that the allegations contained therein are legal conclusions, to which no response is required. To the extent that a response is required, CHW denies any remaining allegations in Paragraph 48.

49.     In response to Paragraph 49 of the Complaint, CHW contends that the allegations contained therein are legal conclusions, to which no response is required. To the extent that a response is required, CHW denies any remaining allegations in Paragraph 49.

50.     In response to Paragraph 50 of the Complaint, CHW denies the allegations contained therein.

51.     In response to Paragraph 51 and its subparagraphs (a) through (d) of the Complaint, CHW denies the allegations contained therein.

52.     In response to Paragraph 52 of the Complaint, CHW denies the allegations contained therein.

53.     In response to Paragraph 53 of the Complaint, CHW denies the allegations contained therein.

54.     In response to Paragraph 54 of the Complaint, CHW denies the allegations contained therein.

### COUNT III – REQUESTED RELIEF PIERCING THE CORPORATE VEIL

55.     CHW denies the allegations contained in the unnumbered paragraph immediately following its Count III and incorporates by reference its responses to Paragraphs 1 through 54 of its Answer. CHW affirmatively states that Double Doc expressly agreed in Section 13.14 of the Equity Purchase Agreement that "[t]his Agreement may only be enforced against, and any

Action based upon, arising out of, or related to this Agreement, or the negotiation, execution or performance of this Agreement, or the Transactions, **may only be brought against the named parties to this Agreement[.]**" (emphasis added).

56.     In response to Paragraph 55 of the Complaint, the allegations are legal conclusions directed at another party, therefore no response from CHW is required. To the extent a response is required, CHW admits that Defendant Marine Holdings, LLC is a member of CHW. Except as expressly admitted, CHW denies the allegations in Paragraph 55.

57.     In response to Paragraph 56 of the Complaint, CHW admits the allegations upon information and belief.

58.     In response to Paragraph 57 of the Complaint, CHW denies the allegations as characterized and contained therein.

59.     In response to Paragraph 58 of the Complaint, CHW admits that it uses the same primary office location as Marine Holdings, LLC. The remaining allegations are directed at another party and therefore no response from CHW is required. Except as expressly admitted, CHW denies the allegations in Paragraph 58.

60.     In response to Paragraph 59 of the Complaint, CHW denies the allegations contained therein.

61.     In response to Paragraph 60 of the Complaint, CHW denies the allegations contained therein.

62.     In response to Paragraph 61 of the Complaint, CHW denies the allegations contained therein.

63.     In response to Paragraph 62 and subparagraphs (a) through (e) in the Complaint, CHW denies the allegations contained therein.

64.     In response to Paragraph 63 of the Complaint, CHW denies the allegations contained therein.

65.     In response to Paragraph 64 of the Complaint, CHW denies the allegations contained therein.

## JURY DEMAND

CHW hereby objects and moves to strike Plaintiff's Jury Demand based on the parties' waiver of the right to trial by jury in Section 13.12 of the Equity Purchase Agreement.

## AFFIRMATIVE AND OTHER DEFENSES

CHW hereby asserts the following affirmative defenses to Plaintiff's Complaint:

1.     The Complaint, in whole or in part, fails to state a cause of action against CHW upon which relief may be granted.

2.     The damages allegedly suffered by Plaintiff, if any, were caused in whole or in part by the acts and omissions of third parties over whom CHW had no control.

3.     Plaintiff's claims are barred as a result of its own actions or inaction, and the damages sustained, if any, are the result of its own actions or inaction.

4.     Plaintiff's claims are barred as a result of its own fraud.

5.     CHW acted in conformity with the law and the relevant provisions of the Equity Purchase Agreement.

6.     CHW has substantially performed all obligations required of it.

7.     If CHW has not substantially performed all obligations required of it, it was legally excused from doing so and/or Plaintiff waived such performance by CHW.

8.     Plaintiff's contract claims are barred by the failure of consideration.

9.     Without admitting any wrongful conduct on the part of CHW, and without

admitting that Plaintiff has suffered any loss, damage, or injury, recovery for any such alleged

loss, damage, or injury must be setoff by the damages that Plaintiff owes to CHW.

10.     Plaintiff's claims are barred by the doctrine of waiver, unclean hands,

acquiescence, release, unjust enrichment, accord and satisfaction, and/or ratification.

11.     Plaintiff's claims are barred by its own bad faith.

12.     Plaintiff's claims are barred by its own breach of contract and/or failure to

perform its contractual obligations in good faith and/or in a commercially reasonable manner.

13.     Some of the foregoing affirmative defenses have been pleaded for purposes of

non-waiver in accordance with Federal Rule of Civil Procedure 8(c). CHW reserves the right to

assert additional defenses in the event discovery indicates they are appropriate.

WHEREFORE, Complete Health and Wellness, LLC respectfully requests this Court

dismiss Double Doc Ranch, Inc.'s Complaint, with prejudice, enter judgment in favor of CHW

and against Plaintiff on all claims, and award CHW its costs and attorneys' fees incurred in the

defense of this matter, and for such other relief as the Court deems appropriate.

### DEFENDANT/COUNTERCLAIM PLAINTIFF'S COUNTERCLAIM

Complete Health and Wellness, LLC, through its attorneys, Holland & Hart LLP, brings

the following counterclaims against Double Doc Ranch, Inc. pursuant to Federal Rule of Civil

Procedure 13(a):

### Parties

1.     CHW is Pennsylvania limited liability company with its primary place of business

in Mount Bethel, Pennsylvania.

2.     Double Doc is a Wyoming corporation with its primary place of business in Big

Horn County, Wyoming.

**Jurisdiction and Venue**

3.      Venue for this action is proper and the Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, because the amount in controversy is greater than $75,000 and the adverse parties are citizens of different states.

**Nature of Counterclaims**

4.      CHW and Double Doc executed an "Equity Agreement" on January 17, 2022.

5.      Through the Equity Agreement, CHW purchased all title, equity, and interest in Wyoming Legacy Meats, LLC (WLM), a meat processing business in Park County, Wyoming.

6.      The Equity Agreement included a Promissory Note, issued by CHW to Double Doc in the amount of One Million Seven Hundred Thousand Dollars ($1,700,000), secured by a security interest in WLM's equipment.

7.      In the Equity Agreement, Double Doc made representations and warranties to CHW.

8.      These representations and warranties included, that WLM owned all machinery, equipment, and other tangible assets necessary for the conduct of the business and that those assets were free from defects, were maintained in accordance with normal business practice, in good operating condition and repair, and were suitable for the purposes of their current use.

9.      Double Doc also represented and warranted that WLM's financial statements were prepared in accordance with Generally Accepted Accounting Principles (GAAP).

10.      Section 9.5 of the Equity Agreement provides an indemnified party the right to provide written notice to the indemnifying party, of any matter that is likely to result in a direct claim. After receiving written notice, the indemnifying party has 30 days to respond in writing to the claim.

11.     As part of the sale, Double Doc represented the value of WLM's equipment at $1,384,768.87 and the value of the supplies at $399,540.53.

12.     After purchasing WLM, CHW found that many items on the equipment list were previously sold to other parties, leased, not in good operating condition, or were part of the real estate.

13.     CHW also found that most of the items on the Supplies list did not exist, were duplicated, or were part of the real estate.

14.     CHW analyzed the equipment and supplies and estimated the value of the equipment to be $787,803.00 and the value of the supplies to be $27,863.45.

15.     CHW also analyzed the financial statements, which it found to be false, misleading, and not in accordance with GAAP.

16.     The balance sheet showed equipment that was non-existent, not owned by WLM, or was worthless; income statements that materially overstated revenue by including sales of a sister entity; materially understated costs of goods sold; misclassified wages and salaries; and misstated income.

17.     CHW invoked its rights under the indemnity provisions of the Equity Agreement by sending a claim for indemnification on February 6, 2024.

18.     Double Doc attached documents in an attempt to prove the true value of the equipment and copies of the financial statements.

19.     Double Doc, through its attorney, acknowledged receipt of the claim for indemnification on February 13, 2024.

20.     Double Doc did not materially respond to CHW's claim for indemnification and instead requested CHW preserve all evidence relating to the transaction.

21.    On March 21, 2024, CHW sent a letter informing Double Doc that CHW was exercising its right of offset due to finding that the financial statements were inaccurate and not in accordance with GAAP, and that the equipment and supplies were grossly overvalued.

22.    The letter informed Double Doc that after applying the offset, CHW owed zero dollars to Double Doc.

## First Counterclaim for Relief

### (Breach of Contract)

23.    CHW realleges and incorporates the preceding paragraphs of this Counterclaim as if they were fully set forth herein.

24.    Double Doc and CHW entered into an Equity Agreement on January 17, 2022.

25.    Under Articles 3 and 4 of the Equity Agreement, Double Doc represented and warranted statements about the equipment and supplies owned by WLM, that the financial statements were in accordance with GAAP, and that the representations made to CHW were true and accurate statements.

26.    Double Doc provided misleading information about the equipment and supplies owned by WLM, and provided misleading financial statements that were not in accordance with GAAP.

27.    CHW provided a written notice of loss under Section 9.5 of the Equity Agreement to Double Doc on February 6, 2024.

28.    Double Doc had thirty days to investigate the claim and respond.

29.    On February 12, 2024, Double Doc acknowledged receipt of the notice of loss but never substantively responded.

30.     By providing misleading information about the equipment and supplies and providing financial statements that were not in accordance with GAAP, Double Doc is in material breach of the contract.

31.     Double Doc failed to remedy the breach upon written notice.

32.     As a result of the breach, CHW suffered damage by making payments based on inaccurate information for an overvalued and misrepresented business in an amount to be proven at trial.

## Prayer for Relief

Wherefore, Defendant/Counterclaim Plaintiff prays for Judgement, Order and Decree of this Court as follows:

1.     For judgment against the Plaintiff/Counterclaim Defendant for damages arising from Plaintiff/Counterclaim Defendant's misrepresentations and breach of the Equity Purchase Agreement in an amount to be proven at trial, plus interest;

2.     For all attorney's fees and costs incurred as a result of Plaintiff/Counterclaim Defendant's default and wrongful conduct as provided for in Section 5 of each Promissory Note;

3.     For post judgment interest at the statutory rate of ten percent (10%);

4.     To setoff any judgment owed by Plaintiff/Counterclaim Defendant against any amount owed by Defendant/Counterclaim Plaintiff under the Purchase Equity Agreement; and

5.     For such other and further relief as the Court finds just and equitable.

DATED: November 4, 2024.

*/s/ Isaac N. Sutphin*

Isaac N. Sutphin, P.C. (Wyo. State Bar # 6-3711)
Macrina M. Sharpe (Wyo. State Bar # 7-5757)
Colton R. Edwards (Wyo. State Bar # 8-7289)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
Facsimile:  307.778.8175
INSutphin@hollandhart.com
MMSharpe@hollandhart.com
CREdwards@hollandhart.com

ATTORNEYS FOR DEFENDANTS
COMPLETE HEALTH AND WELLNESS, LLC,
MARINE HOLDINGS, LLC, OLAV E. SANDNES
and GINA SANDNES

33561399_v1