Laurence Stinson
Scott Stinson
**STINSON LAW GROUP, P.C.**
1421 Rumsey Avenue
Cody, Wyoming 82414
T: 307.587.0300
F: 307.219.5969
E: laurence@stinsonlawyers.com
E: scott@stinsonlawyers.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| DOUBLE DOC RANCH, INC., a Wyoming corporation, <br><br> Plaintiff, <br><br> vs. <br><br> COMPLETE HEALTH AND WELLNESS, LLC, a Pennsylvania limited liability company, MARINE HOLDINGS, LLC, a Delaware limited liability company, OLAV E. SANDNES, an individual, and GINA SANDNES, an individual, <br><br> Defendants. | Civil Action No.  1:24-cv-00132 <br><br><br> **PLAINTIFF'S RESPONSE TO DEFENDANTS MARINE HOLDINGS, LLC, OLAV E. SANDNES, AND GINA SANDNES' MOTION TO DISMISS** |

**COMES NOW** Plaintiff, by and through its counsel, Stinson Law Group, P.C., and hereby

submits this *Response to Defendants Marine Holdings, LLC, Olav E. Sandnes, and Gina Sandnes'*

*Motion to Dismiss.*

### INTRODUCTION

Defendants Marine Holdings, LLC, Olav Sandnes, and Gina Sandnes, ask this Court for

dismissal of any claims against them, arguing they are not proper parties to this suit. Concerningly,

these Defendants seek dismissal prior to the Parties conducting discovery, thereby depriving this

*Pl's Response to Def's Motion to Dismiss* – Page 1 of 16

Court and Plaintiff of all the facts. Regardless, the fact is Plaintiff has properly and sufficiently pled its causes of action for breach of contract and breach of the implied duty of good faith and fair dealing. Appropriately, Plaintiff seeks the equitable remedy of piercing the corporate veil to hold the moving Defendants responsible for their wrongful conduct and to avoid an injustice.

While the Equity Purchase Agreement (the "Agreement") between the Parties lists the entity of Complete Health and Wellness, LLC (herein "Complete Health") as the purchaser, the moving Defendants have been properly named because Plaintiff has met its threshold obligation of setting forth sufficient facts within the four corners of its Complaint to support piercing the corporate veil. The facts in Plaintiff's Complaint set forth substantial allegations which demonstrate that the Defendants have engaged in fraud, inadequate capitalization, and the intermingling of assets, business operations, and finances - which justifies piercing the veil of Complete Health so that liability may attach. Defendants argue in their Introduction that the moving Defendants cannot be forcibly tethered to this litigation merely through their ownership interest in Complete Health. The fact is, they can and should be joined to this litigation because of their bad conduct toward Plaintiff. Piercing is necessary to achieve the just result of holding these Defendants accountable for their breach of contract and breach of the implied covenant of good faith and fair dealing. For the reasons set forth herein, Defendants' Motion to Dismiss fails to meet its burden and should be denied.

## STANDARD OF REVIEW

It is not Plaintiff's burden to prove any of its allegations to survive Defendants' Motion to Dismiss, but rather to demonstrate sufficient facts have been set forth within the four corners of the Complaint.

In reviewing a 12(b)(6) motion, a court **should accept as true all well-pleaded factual allegations in a complaint in a light most favorable to the plaintiff**…. A

claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Plausibility does not equal probability. A plaintiff must show more than a sheer possibility that the defendant acted unlawfully, passing the line from speculation or conceivability to plausibility.

*Lewis v. Monks of the Most Blessed Virgin Mary of Mount Carmel*, No. 23-CV-202-KHR, 2024 U.S. Dist. LEXIS 123184, at *6-7 (D. Wyo. July 11, 2024) (internal citation and quotation omitted) (emphasis added). *See also, Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

"Thus, although the plaintiff does not need to provide detailed factual allegations, the complaint must contain more than mere 'labels,' 'conclusions,' and 'formulaic recitation[s] of the elements of a cause of action'." *Biles v. Schneider*, No. 19-CV-48-F, 2019 U.S. Dist. LEXIS 238834, at *4 (D. Wyo. July 16, 2019) (*quoting, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McKinney v. Granite Peak Fabrication*, No. 19-CV-00266-ABJ, 2020 U.S. Dist. LEXIS 257239, at *5-6 (D. Wyo. Mar. 12, 2020) (*quoting, Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1949).

## Piercing the Veil of an LLC

While the corporate form of a limited liability company can insulate the members from the entity's debts, obligations, and liabilities, "that protection does not extend to behavior resulting in injustice. To avoid injustice, the common law allowed courts to pierce the veil of limited liability in exceptional circumstances." *Mantle v. N. Star Energy & Constr. LLC*, 2019 WY 29, ¶ 126, 437 P.3d 758, 799 (Wyo. 2019) (internal citation and quotation omitted). "Piercing the veil to impose liability on the owners of a business entity is an equitable remedy, thus, the ultimate conclusion as

to whether to pierce the veil is a question of law for the court." *Id.* (*citing,* 1 Fletcher Cyc. Corp. §

41.25, *Equitable basis of remedy*, Westlaw (database updated September 2018)).

Wyoming recognizes a two-part veil-piercing test for extending liability to members:

(1) the limited liability company is not only owned, influenced and governed by its members, but the required separateness has ceased to exist due to misuse of the limited liability company; and

(2) the facts are such that an adherence to the fiction of its separate existence would, under the particular circumstances, lead to injustice, fundamental unfairness, or inequity.

*Mantle,* 2019 WY 29, ¶ 127, 437 P.3d at 799. "This test is fact-driven and flexible, and it focusses on whether the limited liability company has been operated as a separate entity as contemplated by statute, or whether the member has instead misused the entity in an inequitable manner to injure the Plaintiff." *GreenHunter Energy, Inc. v. Western Ecosystems Tech.*, 2014 WY 144, ¶ 28, 337 P.3d 454, 463 (Wyo. 2014). In determining whether these two prongs have been met, courts "consider various factors, including fraud, inadequate capitalization, and the degree to which the business and finances of the company and the member are intermingled." *Mantle,* 2019 WY 29, ¶ 127, 437 P.3d at 799 (*citing, GreenHunter*, 2014 WY 144, ¶ 29-33, 337 P.3d at 463-64).[1] See also, W.S. §17-29-304 for the codification of the factors Wyoming courts consider. However, "even in the absence of fraud, the veil of a limited liability company can be pierced as that of a corporation can." *Kaycee Land & Livestock v. Flahive*, 2002 WY 73, ¶1, 46 P.3d 323, 324 (Wyo. 2002).

"[E]ach case involving the disregard of the separate entity doctrine must be governed by the special facts of that case and the district court must complete a fact-intensive inquiry and

---

[1] The Defendants argue forgoing consideration of these factors **until** the two-prong test is satisfied. (*Defendant Marine Holdings, LLL, Olav E. Sandnes, and Gina Sandnes' Brief in Support of Motion to Dismiss*, ECF No. 13, p. 6). However, that is not the process followed in the caselaw wherein the factors are used to determine **if** the two prongs are satisfied.

exercise its equitable powers to determine whether piercing the veil is appropriate under the circumstances presented." *Mantle*, 2019 WY 29, ¶ 129, 437 P.3d at 800 (internal citations and quotation omitted).

At this juncture, where this Court makes a threshold inquiry put in motion by Defendants' Motion to Dismiss, Plaintiff's Complaint provides sufficient factual details to allow this Court to draw the reasonable inference that the moving Defendants, members and managers of Complete Health, are liable for the misconduct of the LLC. Defendants' Motion should be denied. Then, because of the fact-intensive nature of the determination, Plaintiff should be allowed to move forward with written discovery to and depositions of all Defendants.

## DISCUSSION

Plaintiff's Complaint sets forth sufficient factual allegations that, when accepted as true, state a claim that is plausible on its face and from which this Court can draw a reasonable inference that the moving Defendants are liable for misconduct. This is because the facts meeting Wyoming's two-prong test for piercing the veil of an LLC have been demonstrated therein. As such, liability for the breach of contract and the breach of the implied covenant of good faith and fair dealing in this case can be properly extended to Defendants, Marine Holdings, LLC, Olav Sandnes, and Gina Sandnes.

The particular factors relevant to applying the veil-piercing test under Wyoming law are demonstrated by the following facts pled in Plaintiff's Complaint.

### (i)    Fraud (Actual and Constructive)

The first factor enumerated in W.S. §17-29-304 and considered by the courts is fraud. "While not a prerequisite for piercing a limited liability company's veil, fraud can be a powerful reason to do so. *Amfac Mech. Supply Co.* [*v .Federer*], 645 P.2d [73] at 79 [Wyo. 1982]. 'It is in

the public interest to disregard the legal fiction of a separate entity, whether that be a corporation or LLC, when those benefiting from that fiction commit fraudulent conduct.' *Vandervoort*, 3 DePaul Bus. & Com. L.J. at 74." *GreenHunter*, 2014 WY 144, ¶ 53, 337 P.3d at 469.

When reviewing actions for purposes of piercing the corporate veil, the courts look for both actual fraud and constructive fraud. Additionally, the badges of fraud can be wide-ranging. "[F]raud may be perpetrated by silence as well as by affirmative representations; and when one has a duty to speak, the failure to speak may constitute fraud. We have further explained that even in the absence of a duty to speak, if a person does speak, he must speak the truth and make a full and fair disclosure, as half the truth may be a lie in effect." *GreenHunter*, 2014 WY 144, ¶ 29, 337 P.3d at 463 (internal citation and quotation omitted). Constructive fraud as an alternative to actual fraud can be found from "all acts, omissions, and concealments involving breaches of a legal or equitable duty resulting in damage to another, and exists where such conduct, although not actually fraudulent, ought to be so treated when it has the same consequence and legal effects." *GreenHunter*, 2014 WY 144, ¶ 30, 337 P.3d at 463 (*quoting*, *Johnson v. Reiger*, 2004 WY 83, ¶ 22, 93 P.3d 992, 998 (Wyo. 2004)).

Plaintiff's Complaint is replete with factual allegations that – when taken as true, and viewed in the light most favorable to the Plaintiff – demonstrate fraud on the part of the Defendants and warrant piercing the corporate veil of Complete Health. Rather than repeat those allegations here, Plaintiff points this Court to a number of facts pled in the Complaint that are particularly informative of the intentional and harmful conduct of Defendants.

1. Defendants' almost immediate and constant demands to renegotiate the payment terms of the Agreement: Paragraphs 12, 13, 21, 25 and 35;

2. Defendants' failure to make timely payments, or no payments at all: Paragraphs 20, 23, 36, 37 and 43;

3. Defendants' intentional wasting of the assets and equity in Wyoming Legacy Meats ("WLM") by not utilizing the $2.2 million grant to build a new meat-processing facility and letting the deadline come and go: Paragraph 17; and

4. **Two years** after the execution of the Agreement, Defendants claimed that the items on the Equipment List provided at the time of sale were not as Plaintiff claimed and the financial statements of Plaintiff did not comply with the terms of the Agreement: Paragraphs 34 and 35.

Critically and worth restating in its entirety is Paragraph 29, as it is instructive of the cavalier attitude of Defendant Olav Sandnes toward the sellers, Frank and Caety Schmidt, when pressed about non-payment:

> On September 24, 2023, Sandnes responded to the above email and engaged in an unfair and unlawful attempt to coerce Plaintiff for a price reduction. Without signing the proposed addendum and without payment of the past due amounts, Sandnes "reminds" the Schmidts and their "advisors" that the WLM purchase was made by Complete Health, and not by Sandnes individually, and informs them that Complete Health has no assets outside the WLM business. He then stated:

> I will not put any more money into CH&W or the WLM business until we have a signed Addendum reflecting a reduction in the purchase price to $1.2 million. Being that I have to put money into the operation once or twice a month, that means we need a signed Agreement by October 1st. If not, I will start shutting down the operation in Cody, and discontinue the pursuit of the new plant.

> If you will not reduce the price to $1.2 million without all of the conditions your advisors have come up with, or at a minimum engage in a negotiation, I urge you to cooperate immediately in making arrangements to take over the WLM operations while it still has some value. Once it is shut down, and the new plant is no longer part of the valuation, it will have no value. You must know that the money owed you is secured in assets owned by CH&W, nothing else, nothing more.

> And we are already running against a very tight timeline to get the new plant built. Is this really what you and Caety want?

[*Complaint and Demand for Jury*, ECF No. 1]

As is self-evident, Mr. Sandnes, manager of Complete Health, member and upon information and belief manager of Defendant Marine Holdings, LLC, is threatening Plaintiff, demanding either a renegotiation of the sale price without further consideration, or Plaintiff will suffer Defendants purposeful default on the Agreement and the complete wasting of WLM as the only asset left to Plaintiff. Plaintiff emphasizes that Defendants do not deny this conduct or communication in their Motion to Dismiss, but rather label this email from Mr. Sandnes, as well as the other allegations in Plaintiff's Complaint, as mere conclusory statements with no specific facts provided in support. (ECF No. 13, p. 6) This is clear evidence of constructive fraud as discussed in the *GreenHunter* case, supra. The moving Defendants, however, see this is an acceptable outcome, defining Mr. Sandnes's threat as "evidence of requests to renegotiate the contract". (ECF No. 13, p. 7)

### (ii) Inadequate capitalization

The second factor is the inadequate capitalization of the company to be pierced. "[C]ourts must compare the amount of capital to the amount of business to be conducted and the obligations which must be satisfied. If the LLC is undercapitalized, or if its members have never attempted to make arrangements to secure sufficient capital, these facts may be evidence that the company was used to screen members from legitimate debt because it is not in reality an autonomous company capable of carrying on its own business." *GreenHunter*, 2014 WY 144, ¶ 32, 337 P.3d at 463 (internal citation omitted).

In its Complaint, Plaintiff has set forth factual allegations that, when taken as true and viewed in a light most favorable to the Plaintiff, demonstrate sufficient support for a plausible

claim that Complete Health was undercapitalized. As with the discussion on fraud, supra, Plaintiff will not repeat the well-pled allegations in its Complaint, except to summarize particularly salient factual allegations informative on the inadequate capitalization of Complete Health:

1. Defendants' constant demands to renegotiate the terms of the agreement, thereby demonstrating it was undercapitalized from the very beginning: Paragraphs 12, 13, 18, 25, 29 and 35;

2. Defendants' systematic failure to make timely payments or no payments at all, leading to the reasonable inference that Complete Health was operating without adequate funds: Paragraphs 20, 21, 23, 36, 37 and 43; and

3. The wasting of grants, future infrastructure and probable gains through intentional non-action, resulting in further inadequate capitalization: Paragraphs 17 and 63.

[*Complaint and Demand for Jury*, ECF No. 1]

"In *GreenHunter*, we found the LLC was undercapitalized because 'when [the plaintiff's] invoices were submitted to the LLC, it often had no money in its operating account, and . . . it received periodic money transfers from [its member], which decided how much money would be transferred to the LLC to pay specific bills it decided to pay, and when.'" 2014 WY 144, ¶ 41, 337 P.3d at 465. "Put another way, the LLC was continually undercapitalized by choice, not by external forces[.]" *Id.* at ¶ 43, 337 P.3d at 466." *Mantle v. N. Star Energy & Constr. LLC*, 2019 WY 29, ¶ 128, 437 P.3d 758, 799. The written communication between the Parties regarding non-payment and then late payment on Complete Health's obligations demonstrates purposeful inadequate funding to cover the LLC's known and predictable monthly costs. Similar to the facts in *GreenHunter*, Plaintiff's Complaint demonstrates that Complete Health was purposely

undercapitalized in a manner that the *GreenHunter* Court found justified in piercing the corporate veil.

## (iii) Intermingling of assets, business operations and finances of the company and the members to such an extent that there is no distinction between them

Finally, W.S. §17-29-304 sets out the factor of intermingling of assets for determining when the corporate veil may be pierced so that liability may flow through. To preserve the corporate/limited liability company form, "[f]unds and assets should be separated and not commingled." *GreenHunter*, 2014 WY 144, ¶ 33, 337 P.3d at 464. This factor carries with it numerous aspects that must be analyzed. Courts can look for a lack of an arm's length relationship between the corporate form and the members. When there is evidence of comingling of funds, a lack of separate bank accounts, or lack of separate bookkeeping, those factors can be considered intermingling. Manipulation of assets and liabilities between members and the company so as to concentrate the assets in the former and the liabilities in the latter can be suggestive of improper use of the LLC. Courts can also view aligned business activities and purpose as evidence of intermingling. See, *GreenHunter*, 2014 WY 144, ¶ 45 n.7, 337 P.3d at 467. Future discovery in this case will serve the justice system and this Court's analysis of these fact-intensive questions.

In its Complaint, Plaintiff has met its pleading obligation and set forth facts that, when taken as true and viewed in a light most favorable to the Plaintiff, are sufficient to support a plausible claim that Defendants have intermingled assets, business operations and finances of the company and the members to such an extent that there is no distinction between them. Those are:

1. Defendants Olav and Gina Sandnes are the sole members of Defendant Marine Holdings, LLC, and Marine Holdings is the majority or controlling member of Defendant Complete Health: Paragraphs 3, 4, 55 and 56;

2. Defendant Olav Sandnes is the Manager of Complete Health: Paragraph 5 and 57;

3. Defendant Marine Holdings, LLC pays Complete Health's substantial past due amounts: Paragraph 31 and 60; and

4. Complete Health and Marine Holdings share an address, office, staff and accountant: Paragraph 58.

[*Complaint and Demand for Jury*, ECF No. 1]

"In *GreenHunter*, we cited the following facts as supporting a finding of intermingling: (1) the LLC used its member's accounting department and the same accountants managed the finances of both entities; (2) the entities had the same business address and creditors of the LLC mailed their invoices to the member's address for processing; (3) the LLC's tax returns were consolidated with the tax returns of the member; (4) the LLC did not have any employees independent of the member and the member directly paid its employees for work done for the LLC; (5) the LLC had no revenue separate from the member; (6) the member manipulated the assets and liabilities such that the member reaped all benefits of the LLC's activities while the LLC was saddled with all losses and liabilities." *Mantle v. N. Star Energy & Constr. LLC,* 2019 WY 29, ¶ 129, 437 P.3d 758, 799-800.

As is the case with the undercapitalization of Complete Health, these paragraphs taken from Plaintiff's Complaint demonstrate Defendants' intermingling of assets, business operations and finances similar to the fact pattern in *GreenHunter*. Taken together, they demonstrate a facially plausible fact pattern that allows this Court to draw a reasonable inference that the named members and Defendants are liable and should remain parties to this action.

## DEFENDANTS' CONTENTIONS

Tellingly, Defendants do not directly contest that Defendants engaged in fraud, that they mingled the business assets, operations and finances of the LLC and its members, nor that

Complete Health was undercapitalized. Instead, the moving Defendants employ their energies on telling this Court who is a party to the Equity Purchase Agreement and pointing out the limited remedies available to Plaintiff. In particular, Defendants inform this Court that Plaintiff "…attempts to ignore its negotiated and agreed recourse and the unequivocal language of the Agreement to pursue contractual strangers" pleading with this Court to dismiss the moving Defendants from the suit. (ECF No. 13, p. 4)

The moving Defendants then go on to argue that Plaintiff has failed to plead sufficient facts for this Court to allow Complete Health's corporate veil to be pierced. Here the moving Defendants return to the argument that even if Defendant Complete Health breached its contractual obligations, Plaintiff's security interest in the business and assets of WLM are available and can simply be returned to Plaintiff. Defendants muse that if this is an inequitable result, then why did Plaintiff enter into the Agreement? (ECF No. 13, p. 7)

The answer is readily understandable. During the negotiation process, Plaintiff could not have reasonably foreseen that Complete Health would (1.) fail to make timely payments with some regularity, (2.) intentionally make multiple attempts to re-negotiate the payment terms of the Agreement, offering no consideration in return but instead making threats of non-payment and "shutting down the operation in Cody," thereby leaving WLM with no value, (3.) claim two years after the initial agreement that the asset list was "false and misleading" and that Plaintiffs now owed Defendant Complete Health or, alternatively, should "reduce the purchase price to zero," (4.) change the principle ownership of Complete Health, making Marine Holdings, LLC the majority member to ostensibly add another layer of insulation between Complete Health's non-performance and its members, and (5.) stop making payments altogether. It is clear that Defendants have systematically underfunded and mismanaged Complete Health and, in doing so, have wasted

the assets and potential assets (the $2.2 million grant) of WLM. Plaintiff has been harmed, and no remedy in the Equity Purchase Agreement can adequately address or make up for Defendants' intentional conduct.

Defendants' conduct is precisely why the doctrine of corporate veil-piercing was created in the first place - as a measure to avoid unjust and inequitable results when one party is intentionally a bad actor.

## THE MOTION TO DISMISS IS PREMATURE

The nature of this matter involves a web of facts concerning the interrelatedness of Defendants' actions and non-actions, and the Agreement between Complete Health and Plaintiff. All the facts relevant to the full adjudication of a veil-piercing cause of action cannot be known to Plaintiff at the outset. For the full knowledge of the court, and adjudication on the merits, the Plaintiff must be allowed to conduct discovery on the issues.

The moving Defendants have included the underlying Equity Purchase Agreement in support of their Motion to Dismiss to bolster their argument that they are not listed parties to the contract and are therefore improperly pulled into this action. If this Court finds that reviewing the Agreement is a valid exception to the rule, as Defendants argue, then Defendants' Motion, along with its Exhibit A, can procedurally be analogized to an assertion of non-involvement by affidavit. This Wyoming statutory procedure was recently addressed in *Wearmouth v. Four Thirteen, Ltd. Liab. Co.*, 2024 WY 116, 2024 Wyo. LEXIS 117 (Wyo. 2024). In *Wearmouth*, the Wyoming Supreme Court assessed the statutory provision allowing a motion to dismiss to be supported by an affidavit of non-involvement. By filing an affidavit with the courts claiming non-involvement, an individual or entity aimed to convince the district court that they should be dismissed from the suit. So that a court may be fully informed, this procedure includes time for targeted discovery

after objection to the affidavits. Once discovery is conducted, it is followed by the district court's evaluation of any admissible evidence that the party seeking dismissal was directly or indirectly involved in the occurrence(s) alleged in the action. 2024 WY 116, ¶ 15.

In the case at bar, where Plaintiff disputes the assertion that Defendants are not proper parties to this suit, pointed discovery on the issue will allow the Court more information to evaluate Defendants' Motion to Dismiss prior to making a ruling.

Otherwise, under Wyoming law, the Court has the option to consider matters outside of the pleadings and convert the Defendants' Motion to a Rule 56 Motion for Summary Judgment following the procedure in Rule 12(d). Plaintiff seeks this relief if the Court is not inclined to deny the Motion to Dismiss. That way, this issue could be decided after a reasonable opportunity to accumulate and present all relevant evidence to the Court. *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024) ("When the district court considers documents outside the pleadings without a valid exception, it must convert the motion to dismiss into a motion for summary judgment." Fed. R. Civ. P. 12(d); *Carter v. Stanton*, 405 U.S. 669, 671, 92 S. Ct. 1232, 31 L. Ed. 2d 569 (1972).

### Remedies

This Court should deny Defendants' Motion and allow discovery of all Defendants to proceed. Once discovery is complete in the normal course, Defendants can file their motion for summary judgment, thereby allowing this Court to be fully informed prior to making a ruling. That best serves judicial economy and avoids the potential of a second, related suit involving the same Parties wherein Plaintiff is trying to enforce payment.

Alternatively, in the event this Court grants Defendants' Motion now, it should be granted without prejudice. If Plaintiff is successful in its claims, it is foreseeable that Plaintiff will have to

revisit piercing the corporate veil moving against Defendants post-judgment when, as here, Complete Health has already wasted the assets of WLM. Given that, any Court order granting dismissal should also instruct Defendants not to transfer or otherwise dispose of assets, including cash except in the routine and normal course of business.

An alternative remedy is for Defendant Complete Health to post a bond in the amount of $1,573,409.35 for the pendency of this matter. If Defendant will do that, and agree to pay interest according to the terms of the Agreement if Plaintiff is the prevailing party, Plaintiff will withdraw its Count III asking to pierce the corporate veil.

## CONCLUSION

The factual allegations in Plaintiff's Complaint, taken as true and viewed in a light most favorable to Plaintiff, allow this Court to draw a reasonable inference that Defendants are liable for the misconduct alleged. Plaintiff's Complaint references the pertinent communication and conduct of Defendants, thereby demonstrating that Defendants acted unlawfully.

The bottom line is that basic business practices and societal policy call for Defendant Complete Health to be financially responsible and to cover its potential liabilities. This is not a matter of a small business operating on a shoestring and failing to timely pay its suppliers. Complete Health entered into an agreement in which it agreed to pay Plaintiff $1.7 million and, upon taking control of the assets, immediately started to re-negotiate the payment schedule and then the purchase price. When payment was made, it was at times made by Defendant Marine Holdings. The truth is that Defendant Complete Health improperly manipulated the situation and was continually undercapitalized by choice. Defendant Complete Health, and its members in whatever form, never intended to keep their promise to pay Plaintiff.

Plaintiff prays for this Court's order DENYING Defendants Marine Holdings, LLC, Olav E. Sandnes, and Gina Sandnes' Motion to Dismiss and for whatever other relief the Court deems just and fair.

DATED this 18th day of November 2024.

STINSON LAW GROUP, P.C.

By: /s/Scott Stinson
Scott Stinson
Attorneys for Plaintiff